# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ARTHUR S. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 4156 |
| | ) | |
| DAUBERT CHEMICAL CO. INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Daubert Chemical Co., Inc.'s ("DCC") motion for summary judgment and motion to strike, and on Plaintiff Arthur S. Jackson's ("Jackson") motion to strike and to bar an expert witness. For the reasons stated below, we grant DCC's motion for summary judgment in part and deny the motion in part as moot. We also deny as moot DCC's motion to strike and deny Jackson's motion to strike and to bar an expert witness.

## BACKGROUND

Jackson alleges that he is an African-American man and that in 1993, he began working for DCC as a drum filler. Jackson alleges that during his

1

employment at DCC, he observed negative conduct at the workplace relating to African-American people. For instance, Jackson claims that Greg Kozicki, a DCC employee, wore a t-shirt with Klu Klux Klan figures on it at work. Jackson also states that he heard Ron Sobrowski, a supervisor at DCC, tell Charles Griffin ("Griffin"), an African-American employee, that Griffin should not go to Indiana and implied that this was because of Griffin's race. Jackson also claims that Patrick Sherrick ("Sherrick"), another employee at DCC, stated that he wished he was a police officer so that he could "arrest Black people." (Compl. Par. 10(c)).

According to Jackson, Griffin filed a discrimination charge against DCC with the Equal Employment Opportunity Commission ("EEOC") and Jackson was told to meet with a DCC lawyer to discuss the allegations of racial harassment made by Griffin. Jackson alleges that he told the lawyer about the racist conduct that he had seen at work. Jackson states that in 2004, he testified in a deposition for the Griffin case.

Jackson alleges that after he was deposed in the Griffin case, Jackson's supervisor Mike Farns ("Farns") began to monitor Jackson's work and breaks more closely than he had before Jackson's involvement in the Griffin case. Jackson further alleges that graffiti was discovered in the DCC locker room, which DCC contends stated "It's over for you a__hole." (SF Par. 111). DCC asserts that it employed a handwriting expert to determine which employee was responsible for the graffiti. Jackson claims that Farns and his other supervisor Brian Bell ("Bell")

2

eventually suspended Jackson for writing the graffiti and DCC refused to provide him with any information or evidence supporting the decision to suspend him. According to Jackson, he was required to submit to a series of examinations by a psychologist in order to return to work after his suspension. Jackson contends that he attended three sessions with the psychologist, as was required. Jackson also alleges that on January 24, 2005, he returned to work and that after he had worked nearly his entire shift, he was told he could not continue to work until he signed an agreement, acknowledging that he was obligated to follow the DCC Workplace Violence Policy ("Agreement"). Jackson states that although he had previously signed such an agreement, he signed the new Agreement after consulting with counsel and the Human Resources Department at DCC.

Jackson brought the instant action and includes in his complaint a claim alleging retaliation in violation of 42 U.S.C. § 1981 ("Section 1981") (Count I), and a claim alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count II). DCC has moved for summary judgment on both claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

3

Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Section 1981 Retaliation Claim (Count I)

DCC argues that a plaintiff cannot present a Section 1981 claim based upon retaliation for opposing racial discrimination. A Section 1981 claim, unlike a Title VII claim, "encompasses only racial discrimination on account of the plaintiff's race and does not include a prohibition against retaliation for opposing racial discrimination." *Hart v. Transit Mgmt. of Racine, Inc.*, 426 F.3d 863, 866 (7th Cir. 2005). Regardless of the propriety of Jackson's Section 1981 claim, Jackson indicates in his answer to DCC's motion for summary judgment that "Plaintiff will not pursue his § 1981 claim." (Ans. 15). Therefore, we grant Jackson's motion to voluntarily dismiss his Section 1981 claim (Count I) and deny DCC's motion for summary judgment on the Section 1981 retaliation claim as moot.

II. Title VII Retaliation Claim (Count II)

DCC moves for summary judgment on the Title VII retaliation claim (Count II). In order for a plaintiff to defeat a motion for summary judgment on a Title VII retaliation claim, the plaintiff can proceed under either the direct method of proof or the indirect method of proof. *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003); *Rudin v. Lincoln Land Cmy. Coll.*, 420 F.3d 712, 719-21 (7th Cir. 2005). Under the direct method of proof, a plaintiff must establish a discriminatory motivation through direct or circumstantial evidence. *Rudin*, 420 F.3d at 720.

Direct evidence in such a context would be evidence that "can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." *Id.* at 719-21; *see also Jordan v. City of Gary,* 396 F.3d 825, 832 (7th Cir. 2005)(stating that "[t]o prove discrimination via direct evidence 'essentially requires an admission by the decision-maker that his actions were based on the prohibited animus [and that][i]t should not be surprising that in today's politically correct workplace environment such admissions are rarely, if ever, made or encountered'"); *Rozskowiak v. Village of Arlington Heights,* 415 F.3d 608, 612 (7th Cir. 2005)(stating that "[d]irect evidence 'essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus'")(quoting *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir. 2003)); *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000)(stating that under the direct method of proof, a plaintiff generally must point to overt "smoking gun remarks indicating intentional discrimination"). A plaintiff can present circumstantial evidence under the direct method of proof, but such evidence must be sufficient to create "a triable issue of whether the adverse employment action of which [the plaintiff] complains had a discriminatory motivation." *Rudin,* 420 F.3d at 721. The Seventh Circuit has indicated that circumstantial evidence can create a triable issue only if there is a "'convincing mosaic' of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Rhodes v. Illinois Dept. of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004).

Under the indirect method of proof, a plaintiff must establish a *prima facie* case of discrimination by showing that: "(1) he belongs to a protected class; (2) his performance met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated others not in his protected class received more favorable treatment." *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). If the plaintiff establishes a *prima facie* case, the defendant must provide a "legitimate and non-discriminatory reason for the employment action." *Id.* If the employer does so, the burden shifts back to the plaintiff to show that "the proffered reasons are a pretext for discrimination." *Id.*

### A. Direct Method of Proof

Jackson argues that he can proceed under the direct method of proof. However, he has failed to point to any direct evidence of racial animus toward him, nor has he pointed to sufficient circumstantial evidence to create a body of evidence that indicates DCC intended to retaliate against Jackson because of his participation in the Griffin case. The only real evidence pointed to by Jackson regarding his suspension, which he admits is the basis of his retaliation claim, is that the alleged wrongful suspension and that the suspension came soon after his involvement in the Griffin case. The lack of evidence indicating that DCC's motivation for Jackson's suspension was based upon a retaliatory animus clearly shows that Jackson cannot proceed under the direct method of proof.

We also note that the parties have cited to *Moser v. Indiana Dept. of Corrections*, 406 F.3d 895 (7th Cir. 2005), in which the court stated that in order to proceed under the direct method of proof for a Title VII retaliation claim, a plaintiff must establish that: "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action taken by the employer; and (3) a causal connection between the two." *Id.* at 903. However, in a more recent ruling by the Seventh Circuit in *Rudin*, 420 F.3d 712, the court applied the type of that we discussed earlier in this section and did not apply the factors listed in *Moser*. *Rudin*, 420 F.3d at 720. We further note that even if we were to apply the factors listed in *Moser*, there is not sufficient evidence to show that there was any causal connection between Jackson's testimony in the Griffin case and Jackson's suspension. Therefore, Jackson has not shown that he can proceed under the direct method of proof.

### B. Indirect Method of Proof

Jackson argues that he can also proceed under the indirect method of proof. DCC argues that Jackson has failed to show that he suffered an adverse employment action, and failed to point to similarly-situated employees outside of the protected class who were treated more favorably. DCC also argues that there is not sufficient evidence of pretext.

### 1. Adverse Employment Action

8

DCC contends that Jackson has failed to show that he suffered any adverse employment action as a result of the alleged retaliation against him because of his race. An adverse employment action is an action by an employer that "materially alter[s] the terms and conditions of employment." *Whittaker v. Northern Il. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005)(stating that in general "'adverse employment actions are economic injuries'")(quoting *Markel v. Board of Regents of Univ. of Wis. Sys.,* 276 F.3d 906, 911 (7th Cir. 2002)). The Seventh Circuit has also indicated that "[n]ot every workplace slight is actionable" and that "'mere unhappiness and inconvenience are not actionable under Title VII.'" *Mlynczak v. Bodman*, 2006 WL 851644, at *8 (7th Cir. 2006)(quoting in part *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003) and *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir. 1996)).

In the instant action, Jackson does not contend that his employment was ever terminated by DCC. In the complaint, Jackson alleges that following his deposition testimony in the Griffin case, Farns "began to scrutinize [Jackson's] breaks and monitor his work in a manner that similarly situated employees have not experienced." (Compl. Par. 15). Jackson also alleges that he was falsely accused of writing graffiti in the locker room and that he was suspended from work because of the alleged false allegation. Finally, Jackson contends that he was forced to attend sessions with a psychologist and sign the Agreement in order to return to work.

### a. Scrutiny of Work, Physiological Examination, and the Agreement

Jackson testified at his deposition in this case that the alleged scrutiny of his work by Farns consisted of Farns "peeking around corners" and "peeking in on" him in the break room." (J. Dep. 185, 196). However, such monitoring or scrutiny of Jackson's presence at the workplace is not an adverse employment action because Jackson has not shown that the alleged scrutiny of his work and breaks affected his pay, benefits, or the material terms and conditions of Jackson's employment in any way. Jackson also admits pursuant to Local Rule 56.1 that one of Farn's responsibilities as a supervisor "is to monitor his employees' work, breaks and lunches." ( R SF 89). Jackson has also failed to show how the physiological examinations or the request for him to sign the Agreement affected the material terms and conditions of his employment and that it would constitute an adverse employment action. Thus, Jackson has not shown that the alleged scrutiny of his work, his participation in the physiological examinations, or the signing of the Agreement constituted an adverse employment action.

### b. Suspension

Jackson also contends that he was falsely accused of writing the graffiti in the locker room for which he was suspended from his job. It is undisputed that Jackson was suspended for five days. ( R SF Par. 206). Neither DCC nor Jackson explain whether the suspension was without pay, whether Jackson was ever reimbursed for

the suspension period, or how the suspension affected Jackson's terms and conditions of employment. Since Jackson is the non-movant, we must make such inferences in his favor and presume that the suspension was without pay. *Anderson*, 477 U.S. at 255. In addition, in DCC's reply, DCC acknowledges that Jackson is basing his claims on his contention that the suspension was an adverse employment action and DCC fails to provide any arguments to the contrary in its reply. The Seventh Circuit has made it clear that such a suspension without pay would constitute an adverse employment action. *See Whittaker*, 424 F.3d at 647 (stating that a three-day suspension without pay would constitute an adverse employment action). Thus, Jackson has pointed to sufficient evidence that shows that the five-day suspension of Jackson constituted an adverse employment action.

2. Similarly-Situated Employees

DCC argues that Jackson has failed to point to sufficient evidence that shows that similarly-situated employees outside the protected class were treated more favorably. An employee is similarly situated if the employee "is one who is 'directly comparable to [the plaintiff] in all material respects.'" *Rogers*, 320 F.3d at 755 (quoting *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002)); *Snipes v. Ill. Dep't. of Corrections*, 291 F.3d 460, 463 (7th Cir. 2002)(indicating that a plaintiff must show that "the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct" and that a similarly situated employee is identified by comparing the employee's "performance, qualifications

and conduct" to the plaintiff's "performance, qualifications and conduct").

In the instant action, the only similarly-situated employee identified by Jackson in his answer to the summary judgment motion is Sherrick, who Jackson contends was treated more favorably. According to Jackson, Sherrick was accused of saying that he wanted to be a police officer so that he could "beat down Black people." (Ans. SJ 8). Jackson argues that Sherrick's statement "constituted a direct threat for the African-American employees who worked at the facility" and thus is similar to the graffiti in the DCC locker room that was deemed to be threatening. According to Jackson, despite Sherrick's misconduct, Sherrick was not forced to submit to a physiological examination. However, Jackson admits pursuant to Local Rule 56.1 that Sherrick was given a five-day suspension without pay, which is exactly what Jackson received when he was disciplined. ( R SF Par. 251). In addition, Jackson admits that Sherrick was required to attend an individual training session regarding DCC's workplace policies. ( R SF Par. 252). DCC has also presented evidence showing that Sherrick was placed on a one-year probation. (D Ex. 61). Thus, the undisputed evidence actually shows that Sherrick was disciplined in a more severe fashion than Jackson. In addition, Jackson has failed to show that Sherrick held the same position as Jackson and has not refuted DCC's position that Sherrick did not have the same supervisor as Jackson. *See Peele v. Country Mut. Ins. Co.,* 288 F.3d 319, 330 (7th Cir. 2002)(stating that employees are generally similarly situated if "'the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such

differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them'")(quoting *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617-18 (7th Cir. 2000)). It is Jackson's burden to point to a similarly-situated employee outside the protected class that was treated more favorably, and Jackson has failed to do so.

### 3. Pretext

DCC argues that it has provided a legitimate non-discriminatory reason for its suspension of Jackson, stating that Jackson violated DCC workplace policies when he wrote the threatening graffiti in the DCC locker room. DCC contends that there is insufficient evidence to show that the given reason is a pretext to discriminate against Jackson because of his testimony in the Griffin case. A pretext is defined as "a dishonest explanation, a lie rather than an oddity or an error." *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006)(stating that a plaintiff must show "'more than that [the defendant employer's] decision was mistaken, ill considered or foolish'")(quoting *Kulumani v. Blue Cross Blue Shield Ass'n,* 224 F.3d 681, 685 (7th Cir. 2000)).

In the instant action, there is evidence that shows that Jackson testified in the deposition in the Griffin case regarding alleged improper behavior by other employees at DCC, and that Jackson was subsequently suspended. However, there is ample evidence showing that DCC engaged in an extensive investigation of the graffiti incident, including having a handwriting analyst examine the graffiti and

writing samples from DCC employees. If DCC had really wanted to improperly pin the graffiti on Jackson, it would not have gone through such a thorough investigation because the extensive investigation might have revealed evidence that indicated Jackson was not responsible for the graffiti. Thus, the fact that DCC engaged in an extensive investigation indicates that DCC did not intend to falsely accuse Jackson of writing the graffiti as a way of retaliating against him.

Jackson also argues that there is evidence that DCC retaliated against other witnesses in the Griffin case and that such alleged retaliation indicates an intent to discriminate against those that testified on behalf of Griffin. Jackson claims, for instance, that Patrick Adams ("Adams") testified in the Griffin case and corroborated Griffin's testimony, and that after his testimony in the Griffin case, Adams was given a suspension for failing to report that another employee was wearing an inappropriate t-shirt at work. However, DCC has presented evidence showing that, prior to the suspension of Adams, he had a long history of poor performance and disciplinary problems. Some of Jackson's own exhibits are Adams' performance reviews that indicate that Adams' work and attitude were poor. (J Ex. U, X, Z, AA). There is also documentation regarding an incident in which Adams allegedly pointed a large drill-like piece of equipment at two female employees in a threatening manner and that Adams received a ten-day suspension for such misconduct. (D. Ex. 79, J Ex. DD). The evidence also shows that Adams was required to report instances of alleged discrimination, harassment, and retaliation, and that Adams was first given a warning in April 2004, prior to his testimony in the Griffin case, for failing

to report instances of alleged discrimination, harassment, and retaliation. (J. Ex. Y). Thus, there is not sufficient evidence indicating that DCC retaliated against Adams for his testimony in the Griffin case.

Jackson also claims that Maurice McClinton ("McClinton") testified in the Griffin case in a manner that corroborated Griffin's allegations and that after his testimony, McClinton received a three-day suspension for failing to pump enough materials into a batch of materials. However, similar to Adams, DCC has presented evidence showing that McClinton had a long history of performance problems prior to his testimony in the Griffin case. (D Ex. 83, 84, 86-91). DCC has shown, for instance, that in 2001, McClinton was issued two written warnings for chemical batch errors, and that the first mistake made by McClinton resulted in noxious fumes in the workplace that required the fire department to be called to the DCC plant. (D Ex. 84). DCC has also shown that in 2002, McClinton was issued a one-day suspension for failing to follow batch mixing instructions. (D Ex. 85). Thus, there is no indication that DCC was retaliating against McClinton when he was disciplined for a mixing error, even though this occurred after he testified in the Griffin case. In sum, the record is devoid of evidence that would indicate that DCC's reason for suspending Jackson was a lie and that DCC intended to retaliate against Jackson for his testimony in the Griffin matter. Jackson has not pointed to sufficient evidence of pretext by DCC. Therefore, based on all of the above, we grant DCC's motion for summary judgment in its entirety.

III. Motions to Strike and Bar

Jackson moves to strike portions of DCC's statement of material facts and to bar the expert testimony of Diane Marsh ("Marsh"). Jackson contends that DCC intended to call Marsh at trial as an expert witness to show that Jackson wrote the graffiti in the DCC locker room. Jackson also contends that certain portions of DCC's statement of material facts rely on Marsh's testimony. Jackson claims that Marsh was not properly disclosed as an expert by DCC during discovery and moves to bar Marsh's testimony and to strike portions of DCC's statement of material facts that rely on Marsh's testimony.

Whether Marsh can testify at trial in this matter in no way alters the conclusions above concerning DCC's motion for summary judgment. In arriving at the above conclusions, the court in no way relied upon Marsh's opinion concerning whether Jackson was in fact the guilty party who wrote the graffiti in the DCC locker room. Regardless of whether Jackson actually wrote the graffiti, if DCC engaged in an authentic investigation and DCC supervisors legitimately believed that Jackson wrote the graffiti based upon the investigation results, there would be no retaliation against Jackson in violation of Title VII. The fact that DCC had Marsh conduct the handwriting analysis merely supports DCC's contention that it engaged in an extensive investigation of the matter, rather than hastily blaming Jackson for the misconduct. Thus, the admissibility of Marsh's testimony for the purposes of ruling on DCC's motion for summary judgment is a moot issue and we deny Jackson's motion to strike and to bar as moot.

16

DCC also moves to strike portions of Jackson's statement of material additional facts because Jackson has failed to comply with Local Rule 56.1. However, none of the issues concerning Jackson's statement of material additional facts would affect the determinations made above and we therefore deny DCC's motion to strike as moot.

## CONCLUSION

Based on the foregoing analysis, we grant DCC's motion for summary judgment on the Title VII retaliation claim (Count II). We grant Jackson's motion to voluntarily dismiss the Section 1981 claim. We also deny as moot DCC's motion for summary judgment on the Section 1981 retaliation claim (Count I), DCC's motion to strike, and Jackson's motion to strike and to bar an expert witness.

 _____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 20, 2006